UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Elsa Triana Nivia,

                    Petitioner,              CV-06-5307(CPS)(SMG)

     - against -

                                             MEMORANDUM OPINION
                                             AND ORDER
United States of America,

                    Respondent.

----------------------------------------X

SIFTON, Senior Judge.

On September 24, 2003, defendant Elsa Triana Nivia ("Triana Nivia") was arrested for conspiring with her husband, Rafic Nahle, and Nelson Pulecio-Barrera to import heroin into the United States.  Triana Nivia pled guilty on March 4, 2004, to one count of conspiracy to import heroin into the United States, in violation of 21 U.S.C. § 963, and one count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1).  On October 3, 2005, she was sentenced to a term of 87 months, three years of supervised release and a $200 special assessment.  Now before this Court is Triana Nivia's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255.

In support of her motion, Triana Nivia contends (1) that she should have received a minor role reduction; (2) that her counsel rendered ineffective assistance by not giving her better pre-trial advice and not achieving a favorable plea bargain; (3) that

because she did not cooperate with the government her sentence
was improperly enhanced as compared with those of her co-
defendants; and (4) that the court erred in its sentence in not
departing downward based on duress.[1]  For the reasons stated
below, defendant's  motion is denied.


**Background**

    The following facts are drawn from the parties' submissions
in connection with this motion.   Disputes are noted.


*Petitioner's Involvement in Drug Conspiracy*

    On January 11, 2003, a cargo shipment of twelve wooden
crates arrived at John F. Kennedy International Airport on a
flight from Caracas, Venezuela.  The crates contained a total of
360 leather handbags sent by Inversiones Cuyuni in Venezuela and
consigned to Venise Verde, Ltd., ("Venise Verde"), West New York,
New Jersey.  On January 13, 2003, United States Customs
Inspectors examined the shipment and found 8.8 kilograms of
heroin hidden within the cardboard linings of handbags in three
of the crates.

    Agents of the Department of Homeland Security, Immigration
and Customs Enforcement ("ICE") arranged for a controlled

_____

    [1] Petitioner alleges that she participated in the conspiracy because of
threats to her brother's life.

delivery of the crates, and on January 17, 2003, an ICE agent posing as a delivery person delivered them to Venise Verde, where they were accepted and opened by Rafic Nahle ("Nahle"), the owner and president of Venise Verde. Shortly thereafter, Nahle was arrested.

Soon after Nahle's arrest, agents determined that Nelson Pulecio-Barrera ("Pulecio-Barrera"), also known as "Carlos," was involved in the heroin shipment and arrested him. Pulecio-Barrera subsequently entered into a cooperation agreement with the government and provided information to law enforcement agents about the narcotics importation conspiracy in which he had been involved, identifying Rafic Nahle and Nahle's wife, the petitioner, as his co-conspirators. On September 24, 2003, petitioner was arrested and subsequently detained pending trial. Report of Investigation ("Report"), Exhibit C to Government Sentencing Letter of January 11, 2005 ("Jan. 11 Letter"), at 4.

Following Triana Nivia's indictment, petitioner met with the government at a proffer session on December 11, 2003. She informed the government about the leading role her brother, Luis Fernando Triana Nivia ("Luis Fernando"), a resident of Colombia, had played in conceiving the heroin shipment and in procuring her agreement to assist in carrying it out by arranging to receive the goods at her husband's store, Venise Verde. Report, Exhibit D to Jan. 11 Letter, at 2. Petitioner states in her motion that

"I did not participate in any prior meetings or negotiations to purchase the narcotics." Petitioner's Motion ("Motion") at 4. In the proffer session she described several meetings with Pulecio-Barrera and her husband during which narcotics were not mentioned. Report, Exhibit D to Jan. 11 Letter, at 4. She also stated that she had discussed the heroin shipments by phone in the United States with Pulecio-Barrera and with her brother and Freddy Cespedes[2] in Colombia, although only about receiving the shipment. Probation Department Presentence Investigation Report dated July 2, 2004 ("PSR") ¶ 8; Report, Exhibit D to Jan. 11 Letter, at 2-4.

The petitioner has given varying accounts of her reasons for entering into the conspiracy. In post-arrest statements she told investigators that she had agreed to become involved because she needed the extra money. PSR ¶ 9. Later she stated that she had agreed to participate in the conspiracy to help her brother, who had been in a serious motorcycle accident, financially. Jan. 11 Letter at 6. Finally, in her pre-sentence letters she alleged that her brother had been threatened by the drug traffickers before the shipment and that after agreeing to participate she had tried to "get out," but had gone through with the project out of fear for her brother's life. Jan. 11 Letter at 7; Motion at

---

[2] Freddy Cespedes was identified by petitioner in the proffer session as the "boss" in Venezuela of heroin trafficking operations of which the instant offense was a part. (Report, Exhibit D to Jan. 11 Letter, at 4).

9.  On October 28, 2003, petitioner's mother in Colombia received a telephone call informing her that her son Luis Fernando had been forced out of his vehicle, blindfolded and abducted.  PSR ¶ 14.  Petitioner stated at the December 11 proffer session that she believed her brother had been kidnapped and killed by the same people that he was dealing with regarding the heroin.  Exhibit D to Jan. 11 Letter at 4.  She also later told the government that in February 2004 she convinced her family to go to the authorities to report her brother's disappearance because she believed that if the authorities investigated, they would uncover facts corroborating or explaining things she had told case agents in reference to her offense.  PSR ¶ 14.  On February 20, 2004, petitioner's mother in Bogota went to the police to report the disappearance. *Id. See also* Attorney General's Office [Colombia] Complaint ("Complaint"), Exhibit E to Jan. 11 Letter at 1.

*Petitioner's Guilty Plea*

On March 4, 2004, Assistant U.S. Attorney Toni Mele sent a letter to petitioner's counsel pursuant to *United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991), setting forth the government's position regarding the Sentencing Guidelines and statutory penalties the petitioner would face upon a guilty plea. *See* Government's Memorandum in Opposition ("Government's Memo")

at 5.  Defense counsel reviewed the contents of this letter with

petitioner.  Affirmation of Steven N. Gordon ("Gordon

Affirmation") at 2.

On March 4, 2004, Triana Nivia pled guilty to Counts One and

Two of the superseding indictment.  At the plea allocution, the

following exchange took place:

> THE COURT:      If you plead guilty to this accusation,
> you could under our laws be sent to
> prison for the rest of your life and you
> must be sent to prison with some
> exceptions but you must be sent to
> prison for a period of at least ten
> years.  Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT:      When I say there's some exceptions,
> there are circumstances under which the
> mandatory minimum sentence will not be
> imposed but since the decision is
> whether the mandatory minimum can or
> cannot be imposed you have to recognize
> that I'm the one who makes the
> determination and I cannot today tell
> you that I will not impose the mandatory
> minimum.  In fact, I can't tell you
> whether I will impose the life sentence
> or not.  It seems to me unlikely if what
> you say is your role that I would impose
> anything like a life sentence but you
> should be aware that that is the maximum
> sentence.  Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

Transcript of Plea Allocution, March 4, 2004, ("Plea Tr.") at 9.

The petitioner and the Court also had the following exchange

regarding her plea:

> THE COURT:      As long as the sentence I impose is

something less than life imprisonment,
then you can't take back your plea of
guilty once it's entered even if the
sentence I impose turns out to be more
than you expect. You can ask another
court to review my sentence if you think
it's too harsh, but you cannot take back
your plea of guilty once it's entered.
Do you understand all that?

THE DEFENDANT: Yes.

THE COURT:    Has anyone threatened or pressured you
to plead guilty?

THE DEFENDANT: No.

THE COURT:    Are you doing this of your own free
will?

THE DEFENDANT: Yes.

                    .  .  .

THE COURT:    In your own mind, have you been promised
anything in return for pleading guilty
by the prosecutor or anyone else?

THE DEFENDANT: No.

Plea Tr. at 15-16. Regarding assistance of counsel, the

following exchange took place:

THE COURT:    Ms. Nivia, you have the right to
assistance of a lawyer at every stage of
this case. You have that right whether
you plead guilty or not. In all events
you'll have a lawyer. If for any reason
you're not satisfied with the lawyer you
have now, you can ask for another one.
And if you can't afford to pay for
another lawyer, I can appoint another
lawyer to represent you at no cost to
you.

              Do you understand all that?

THE DEFENDANT: Yes.

THE COURT:     Are you satisfied with the lawyer you
               have now or not?
THE DEFENDANT: Yes, I am.

THE COURT:     Have you had a long enough time to
               discuss with your lawyer what you intend
               to do today?

THE DEFENDANT: Yes.

Plea Tr. at 5.  The Court informed the petitioner about the
penalties she faced as to each count, that the penalties could
run consecutively and that the sentencing decision was made by
the Court, not the government or her lawyers.  She stated that
she understood the charges and penalties, and pled guilty to both
counts.  *Id.* at 9-16.

On April 27, 2004, Pulecio-Barrera testified regarding the
conspiracy in *United States v. Rafic Nahle*, 03-CR-490(S-1)(CPS).
At trial, Nahle argued in his defense that he had been "duped,
conned and played" upon by the petitioner, who he claimed had
orchestrated the drug importation.  Jan. 11 Letter at 3.  The
jury acquitted Nahle.

*Petitioner's Sentencing*

On December 1, 2004, September 26, 2005, and October 2,
2005, petitioner's sentencing counsel, Sabrina P. Shroff, sent
letters to the Court seeking downward departures from the
sentence recommended by the Sentencing Guidelines on grounds of

duress, aberrant behavior, family circumstances and a disparity between Triana Nivia's sentence and those of her co-conspirators, as well as for a minor role adjustment. *See generally* Sabrina Shroff Sentencing Letters ("Shroff Letters"). The government also notified the Court that petitioner was safety-valve eligible under 18 U.S.C. § 3553(f).[3] *See* Government's Memorandum in Opposition ("Government's Memo") at 8.

At sentencing, on October 3, 2005, I granted Triana Nivia reductions in her offense level based on her acceptance of responsibility and on the safety valve. *See* Sentencing Transcript dated October 3, 2005, ("Sentencing Tr.") at 8-9. With a criminal history category of I, petitioner faced a range of 108 to 135 months. I denied the applications for downward departures and for a minor role adjustment. *See* Sentencing Tr. at 9-15. Petitioner was thereafter sentenced to a term of imprisonment of 87 months, three years of supervised release and a $200 special assessment. *Id.* at 17.

---

[3] In pertinent part, 18 U.S.C. § 3553(f) provides that in certain drug cases,

> the court shall impose a sentence . . . without regard to any statutory minimum sentence, if the court finds at sentencing 1) the defendant does not have more than 1 criminal history point . . . ;(2)the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager or supervisor of others in the offense . . . ; and (5) . . . the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense . . . .

18 U.S.C. § 3553(f).

On October 6, 2005, defendant's attorney, Sabrina Shroff, filed a notice of appeal. Arza Feldman ("Feldman") replaced Ms. Shroff as appellate counsel and moved the Court of Appeals to be relieved and for summary affirmance, pursuant to *Anders v. California,* 386 U.S. 738 (1967), claiming there were no non-frivolous issues on appeal. By letter dated May 6, 2006, Feldman also apprised defendant of his conclusions and of the probable dismissal of the appeal, as well as of her right herself to raise any issues on appeal either *pro se* or with the assistance of successor counsel. *See* Brief Submitted by Appellate Counsel Feldman ("*Anders* brief") at 26. On July 17, 2006, Feldman's motion was granted. On September 22, 2006, the defendant filed the present motion.

## Discussion

### *The Procedural Bar*

The defendant bases her application on four grounds, three of which relate to her sentence.

The government argues that review of the three sentencing grounds is procedurally barred from collateral review because defendant did not raise them on appeal. The Supreme Court has held that "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States,* 523 U.S. 614, 621 (1998). If a defendant fails to raise

a claim on direct review she may raise it in habeas only if she can demonstrate *either* (1) cause for the failure, and actual prejudice, or (2) actual innocence. *Id*. at 622; *see also United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal."); *Billy-Eko v. United States*, 8 F.3d 111, 113-14 (2d Cir. 1993)("[W]here a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in [a] subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom."); and *Hernandez v. United States*, Nos. 99-204 and 02-1663, 2003 WL 223467, at *3 (S.D.N.Y. 2003)("Absent a complete miscarriage of justice, claims alleging non-constitutional sentencing errors that have not been raised on direct appeal may not be reviewed in a § 2255 motion.").

The Supreme Court has stated that "'cause' . . . must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)*, cited in Marone v. United States*, 10 F.3d 65, 67 (2d Cir.1993) *and United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995)(emphasis in original). "'Prejudice' must be so substantial that it "undermines the integrity of the entire trial . . . infecting [it] with error of constitutional dimensions." *Jorge*

*v. U.S.* 818 F.Supp. 55 (S.D.N.Y. 1993); *see also United States v. Frady*, 456 U.S. at 169, 170 (1982) (stating that petitioner has "the burden of showing that the errors infecting his entire trial with error of constitutional dimensions" were of such "fundamental character" as to render "the entire proceeding irregular and invalid"); and *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998)("In addition to cause, a habeas petitioner must also demonstrate actual prejudice resulting from the alleged error . . . by showing that he was denied 'fundamental fairness' at trial.").

Triana Nivia's appellate counsel, on reviewing the record, concluded that there were no non-frivolous issues available for appeal and moved the court to be relieved. *See Anders* brief at 10. The Court of Appeals agreed with counsel's *Anders* analysis and summarily affirmed, ending the appeal phase. Court of Appeals for the Second Circuit Mandate dated July 17, 2006 ("Mandate"). *See Brown v. United States,* No. 02-2063, 2003 WL 21785150, at *1 (S.D.N.Y. July 31, 2003)("In light of the Second Circuit's summary grant of . . . appellate counsel's motion for *Anders* relief, based in part on the argument that [petitioner's] plea was voluntary, [petitioner] cannot now raise the same issue, which the Second Circuit rejected, in his § 2255 petition.").

After appellate counsel filed his brief, petitioner could still have raised these issues on appeal; the filing of an *Anders*

brief does not prevent petitioner from filing a *pro se* brief. *Jorge v. United States*, 818 F.Supp. 55, 57 (S.D.N.Y. 1993). In his May 6, 2006, letter, petitioner's appellate counsel told her that "you have the unqualified right to raise any and all issues you so desire on appeal by either moving . . . to file a *pro se* brief . . . or requesting the assistance of successor appellate counsel." *Anders* brief at 26. Subsequent to the *Anders* filing and prior to summary affirmance by the court, the petitioner did not seek to appeal her case further. Since there is in petitioner's submission no showing of cause for her failure to pursue further appeal after the *Anders* submission,[4] it is unnecessary to address the question whether she was actually prejudiced by this failure. Accordingly, defendant's claims regarding minor role reduction, improper enhancement as compared with co-defendants and downward departure based on duress do not provide a basis for relief under 28 U.S.C. § 2255.

*Ineffective Assistance of Counsel*

Petitioner states that her trial counsel rendered ineffective assistance by not giving her better pre-trial advice and not achieving a more favorable plea bargain.

---

[4] Even were petitioner to claim lack of assistance as cause for her failure to pursue a further appeal, the Supreme Court has held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

The Second Circuit has held that "the failure to raise
ineffective assistance of counsel claims on direct appeal . . .
should not necessarily be treated similarly to a failure to raise
other constitutional claims . . . . [Such] claims are
appropriately brought in § 2255 petitions even if overlooked on
direct appeal because resolution of such claims often requires
consideration of matters outside the record on direct appeal."
*Billy-Eko,* 8 F.3d at 114.[5]  Therefore, I here address this
question.

It is well settled that to prevail on a claim of ineffective
assistance of counsel the petitioner must show both (1) that her
counsel's performance was deficient in that it was objectively
unreasonable under professional standards prevailing at the time,
and (2) that counsel's deficient performance was prejudicial to
the petitioner's case. *Hernandez,* 280 F. Supp. 2d at 122 (citing
*Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The
petitioner cannot meet the first prong of this test "merely by
showing that his counsel employed poor strategy or made a wrong
decision," but must establish "that counsel made errors so

---

[5] The Supreme Court has also held that such a claim is an exception to
the general rule that claims not raised on direct appeal may not be raised on
collateral review unless the petitioner shows cause and prejudice, because
when this particular grievance is brought on direct appeal "the court must
proceed on a trial record not developed precisely for the object of litigating
or preserving the claim and thus often incomplete or inadequate for this
purpose." *Massaro v. United States*, 538 U.S. 500, 505 (2003).  Further,
"[t]he trial record may contain no evidence of alleged errors of omission,
much less the reasons underlying them."  Thus "the district court [is] the
forum best suited to developing the facts necessary to determining the
adequacy of representation during an entire trial."  *Id.*

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Such a showing must demonstrate that counsel's representation "fell below an objective standard of reasonableness" judged by "prevailing professional norms." *Id.* at 688.[6] The *Hernandez* court added that "there is a strong presumption that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving that counsel's representation was unreasonable under prevailing norms . . . ." 280 F. Supp. 2d at 122 (citing *inter alia Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986)).

Section 2255 provides that the court shall grant a prompt hearing and "make findings of fact and conclusions of law" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Second Circuit has noted that in "applying this language, the Supreme Court has frowned upon reliance on factual

---

[6] "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. . . . [In this context the] first half of the . . . *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett* . . . and *McMann* . . . ." *Hill v Lockhart* 474 U.S. 52, 58-59 (1985). In *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the Supreme Court described this standard as "within the range of competence demanded of attorneys in criminal cases" and declared that "judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." Thus "a defendant who pleads upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

statements in opposing affidavits, since these are not 'files and records of the case.'" *U.S. v. Salerno*, 290 F.2d 105 (2d Cir. 1961). It has also held that a hearing will be granted if the application contains "assertions of fact that a petitioner is in a position to establish by competent evidence," but has warned that "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *U.S. v. Aiello*, 814 F.2d 109, 113, 114 (2d Cir. 1987). *Compare U.S. v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)("[T]he court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.")

Petitioner states in her motion that counsel at her guilty plea, Steven N. Gordon ("petitioner's counsel," "Gordon"), failed to give her appropriate pre-trial advice and to pursue a favorable plea offer, and that therefore her plea was not "truly voluntary" but rather a "Blind Plea," entered "without benefit of knowing exactly what the legal ramifications of that would be." Motion at 7.[7] Her lawyer Gordon states that "on at least ten

---

[7] Petitioner states that petitioner's counsel "did not inform me as to the proper judicial proceedings of my defense or explanation of any such methods of relief available to me"; that he did not "take the time or effort to explain the legal process of plea negotiations" and that he "he was not effective in any explanation of judicial proceedings or defense to me." Motion at 6-8. Petitioner also wrote to the government's attorney, saying that Gordon "led me wrong and I followed blindly" and that he "said to me just five minutes before [we were] to enter the courtroom . . . you have to plead Guilty and only answer 'Yes' to everything the judge asked. He said for me not to worry, [that] he would fix whatever needed to be at a later time . . . at no time did he ever show me any type of Plea Agreement." Letter dated February 11, 2007, from Elsa Triana Nivia to AUSA Toni Mele ("Feb. 11 Letter") at 1-2.

separate occasions, I did in person fully explain to [petitioner]
all aspects of her case . . . including . . . the impact of any
plea agreement . . . ." Affirmation of Steven N. Gordon ("Gordon
Aff.") ¶ 4.[8] He notes that since the government was not offering
any incentive for an agreement, "a plea agreement would have only
precluded the defendant from any future appellate relief," Gordon
Aff. ¶ 8, and that therefore "the defendant and I decided to
pursue a strategy wherein she would not enter into a plea
agreement and we would argue to the court for, *inter alia*, a
downward departure." *Id.* ¶ 7.

As in *Hernandez,* petitioner's allegations are contradicted by
the record - "specifically refuted by . . . sworn statements at
the plea allocution" that she was "satisfied" with her counsel;
that she had "had a full opportunity to discuss with counsel the
consequences of pleading guilty"; and that she "had not been
coerced into . . . pleading guilty, and . . . was pleading guilty
voluntarily . . . ." *Hernandez,* 280 F. Supp. 2d at 122. As the
Supreme Court has held, "[s]olemn declarations in open court
carry a strong presumption of verity. The subsequent
presentation of conclusory allegations *unsupported by specifics*
is subject to summary dismissal, as are contentions that in the

---

[8] Gordon also states: "[T]he Government was not offering [the
petitioner] any incentive or better terms than a plea to the indictment would
have yielded. I spoke with the Assistant many times about all aspects of this
case, especially about a possible plea agreement. Each and every offer
conveyed by the government was in turn relayed and explained by me to the
defendant. The Government was steadfast in position." Gordon Aff. ¶ 10.

face of the record are wholly incredible." *Blackledge v Allison,*
431 U.S. 63, 73 (1977)(emphasis supplied). "[T]he allegations of
the motion need not be accepted to the extent that they are
contradicted by the court's own records.  The court is entitled
to rely on its own records and on the reporter's transcript of
what occurred when defendant was convicted." Wright & Miller, 3
Fed. Prac. & Proc. Crim. 3d § 599.  *See also United States v.
Torres*, 129 F.3d 710, 715-717 (2d Cir. 1997)("A motion to
withdraw a guilty plea may be denied without a hearing where the
defendant's allegations "merely contradict the record" . . . or
are "simply conclusory."); *Pham v. U.S.*, 317 F.3d 178, 182 (2d
Cir. 2003)("[O]ur precedent requires some objective evidence
other than defendant's assertions to establish prejudice.").[9]

The Second Circuit has urged courts to take pains to
construe the submissions of a *pro se* litigant "liberally" and to

---

[9] *Compare Dziurgot v. Luther*, 897 F.2d 1222 (1st Cir. 1990)("[A]
petition can be dismissed without a hearing . . . if the allegations cannot be
accepted as true because they are contradicted by the record . . . or (are)
conclusions rather than statements of fact.").  The D.C. Circuit has also
determined that

> [a]ppellants' allegations that they neither understood the consequences
> of their guilty pleas nor pled voluntarily are directly contradicted by
> their answers to the Rule 11 questioning.  We therefore hold that the
> district court did not err in refusing to conduct an evidentiary hearing
> before denying either appellant's petition for post-sentence relief. . .
> . [I]n the Rule 11 proceedings the court asked each appellant whether he
> was satisfied with his legal counsel and whether his plea had been
> coerced. Each expressed satisfaction with his attorney and denied any
> coercion.  Because appellants' responses to the Rule 11 questions are
> presumed to be true . . . the district judge was justified in relying on
> them.

*U.S. v. Wah*, Nos. 89-3117 and 90-3146, 1990 WL 212550, at *3 (D.C. Cir.
December 18, 1990).

interpret them so as "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) (citations omitted). However, most of petitioner's argument consists of general statements and conclusory allegations which contradict her sworn statements at her plea allocution. *Hernandez*, 280 F. Supp. 2d at 122; *see* Motion at 6-8; note 7, *supra*. The only factual allegation petitioner offers is that her counsel told her, just prior to entering the courtroom, that "you have to plead Guilty and only answer 'Yes' to everything the judge asked [and] said for me not to worry, [that] he would fix whatever needed to be at a later time." Feb. 11 Letter at 1-2. This statement is contradicted by her statement that she had not been made any promises other than those referred to in her allocution. Because petitioner fails to show how her counsel's assistance was deficient, she fails to satisfy the first prong of the *Strickland* test.

However, she also fails to establish the second, or "prejudice," prong. The second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v Lockhart* 474 U.S. 52, 59 (1985). The defendant "must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Id*. Here, petitioner cannot satisfy the second prong because she has not alleged that she would not have pled guilty but for her

counsel's errors. *See Hernandez,* 280 F.Supp.2d at 123 (petitioner "could not satisfy the second prong of the Strickland inquiry because he [did] not allege that but for his counsel's alleged errors he would not have pleaded guilty"). Even construing her petition liberally, nothing in the record suggests that petitioner would have pled not guilty. Petitioner's allegations that her counsel failed to pursue a plea agreement or to discuss such a possibility confirm a conclusion that petitioner would not have gone to trial had her counsel been more effective.

## Conclusion

For the reasons stated above, petitioner's motion is denied. The clerk is directed to transmit a copy of the within to all parties and to the magistrate judge.


SO ORDERED.


Dated :    Brooklyn, New York
           August 15, 2007


                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                        United States District Judge